**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **RACHEL HILLS** | * | **CIVIL ACTION NO. 25-838 M (1)** |
| | * | |
| **VERSUS** | * | |
| | * | **JUDGE BARRY ASHE** |
| **TREASURE CHEST CASINO, LLC** | * | |
| **and BOYD GAMING CORPORATION** | * | **MAG. JUDGE JANIS VAN MEERVELD** |

**************************************************************

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

As the Fifth Circuit has recognized specifically in the merchant liability realm, a lack of evidence is not to be mistaken for a genuine dispute of material fact. *Derousselle v. Wal-Mart Louisiana, L.L.C.*, 701 F. App'x 349, 351 (5th Cir. 2017) ("Derousselle mischaracterizes a lack of evidence as a genuine dispute. ... This is not a dispute of fact: rather, the absence of evidence prevents Derousselle from demonstrating that Wal-Mart had notice of the grape."). Here, Plaintiff, Rachel Hills, is faced with an evidentiary void relative to her restroom slip-and-fall claim against Defendant, Treasure Chest Casino, L.L.C. ("Treasure Chest"), in that she lacks evidence on not just one, but all three, essential elements of a claim under the governing merchant liability regime of La. R.S. 9:2800.6, which is fatal to her suit.

"While merchants must exercise reasonable care to protect their patrons and keep their premises safe from unreasonable risks of harm, they are not insurers of their patrons' safety and are not liable every time an accident happens." *Sepulvado v. Travelers Ins. - Charter Oak Fire Ins. Co.*, 52,415 (La. App. 2 Cir. 11/8/18), 261 So.3d 980, 983. In other words, the law recognizes the truism that "accidents happen," and "[t]he mere occurrence of an accident on a merchant's premises cannot and does not serve on its own to establish actionable negligence." *Lemelle v. Boyd*

*Gaming Corp.*, No. 2:24-CV-00388, 2025 WL 3205701, at *2 (W.D. La. Nov. 17, 2025) (Cain, Jr., J.) (citing *Degree v. Galliano Truck Plaza, LLP*, (La. App. 1 Cir. 1/10/19), 271 So.3d 315, 318).

Because Plaintiff lacks sufficient evidence to establish actionable negligence, her claim fails, and summary dismissal is warranted, pursuant to Federal Rule of Civil Procedure 56.

## **Factual Background**

In the late afternoon of 13 April 2024, Plaintiff was a patron at Treasure Chest, having arrived around 3:00 p.m. or 4:00 p.m. on that Saturday.[1] After her partner dropped her off in the back parking lot, she went inside and began playing in the casino while he looked for a place to park.[2] She played machine games for about five (5) minutes before deciding to go to the restroom, and she made her way to the ladies' restroom on the main deck of the Treasure Chest casino barge.[3]

According to Plaintiff, she entered the ladies' room and immediately went into the first stall.[4] Plaintiff claims that while she was using the facilities in that stall, a housekeeping employee working in the restroom "mopped [her] feet."[5] After she finished in the stall, Plaintiff exited the stall without incident, and she proceeded to the sink area to wash her hands at the farthest sink from the stall she was in, making her way there without incident.[6] She then washed her hands, got a paper towel from the wall dispenser, dried her hands, and threw out the wet paper towel, again all without incident.[7] Then, once she was all finished, she started to walk to exit the restroom, and

---

[1] See excerpts from deposition of Rachel Hills, attached hereto as **Exhibit A**, p. 30:25 – 32:18.
[2] Exhibit A, p. 33:3-21.
[3] Exhibit A, p. 33:19 – 34:19; *see also* surveillance footage, attached hereto as **Exhibit 1 to Exhibit B**, the declaration of Randy Gamble (authenticating said footage), at timestamp of 3:24:28 p.m. – 3:24:35 p.m.; *see also* Incident Report, attached as **Exhibit 1 to Exhibit C**, the declaration of Lawrence "Roger" Watson (authenticating said report). Please note that Ms. Hills is the woman wearing the plaid leggings and white t-shirt, as was memorialized in the photographs included with the Incident Report.
[4] Exhibit A, p. 34:13-19.
[5] Exhibit A, p. 35:3-5.
[6] Exhibit A, p. 35:8-11.
[7] Exhibit A, p. 35:11-14.

she slipped and fell on her way out.[8]

Following the fall, Plaintiff was helped up by the housekeeping employee, Ms. Dinora Vargas, who was working for Treasure Chest's Environmental Services ("EVS") department, which handled housekeeping and cleaning duties at Treasure Chest. Plaintiff then proceeded to security to report her fall.[9] Treasure Chest security personnel investigated the incident, took relevant photographs, and obtained handwritten statements from both Plaintiff and Ms. Vargas.[10] Plaintiff declined the option of emergency medical services offered by Treasure Chest, instead electing to seek medical attention on her own following her departure from the casino property.[11]

The Incident Report memorialized the occurrence and the subsequent investigation.[12] As recorded therein, Security Officer Scott Guidry visually inspected the incident scene – *i.e.*, the restroom at issue – and did not observe any wetness on the ground, which Plaintiff had asserted to be the contributing factor for her fall.[13] The photographs obtained of the restroom depict three (3) "Caution Wet Floor" signs affixed to the walls of the restroom,[14] including one on the stalls that Plaintiff necessarily would have had to pass to get from the first stall to the far sink[15] and one above the paper towel dispenser that Plaintiff would have used, according to her testimony that the paper towel was "right there" next to that farthest sink.[16] Guidry also photographed the restroom floor, and the pictures do not show any visual signs of water or any other wetness in the area.[17]

---

[8] Exhibit A, p. 35:13-20.
[9] Exhibit A, p. 40:22 – 41:22.
[10] *See* Exhibit C-1; *see also* Exhibit A, p. 43:8 – 46:10.
[11] *See* Exhibit C-1, p. 1.
[12] *See* Exhibit C-1.
[13] Exhibit C-1, pp. 4, 6-7 (TCC 0005, 0007-0008).
[14] Exhibit C-1, pp. 8-14 (TCC 0009-0015).
[15] Exhibit A, pp. 39:14 – 40:7.
[16] Exhibit A, p. 40:3-7.
[17] Exhibit C-1, pp. 8-14 (TCC 0009-0015).

As described herein, Plaintiff lacks evidentiary support for all elements of her claim, but perhaps most notably, Plaintiff conceded *she did not see any water or wetness on the ground where she fell*:[18]

**Q.** … So you said you slipped as you were walking out of the restroom itself?
**A.** Huh-huh.
**Q.** Yes?
**A.** Yes.
**Q.** Okay, and it was -- did you see exactly what you slipped on?
**A.** *The floor, like, it was -- it was clear, like, you know, the regular walkway.* ***It ain't had nothing on there***, but when I was walking and when I got up, my pants and stuff was wet.
**Q.** [] *Did you see a puddle or anything like that?*
**A.** ***No, ma'am.***

While Treasure Chest anticipates that Plaintiff may attempt to blame "mopping" as the purported condition that caused her fall (based on her deposition testimony), there's a significant problem with that approach – the mop that EVS employee Vargas was utilizing in the restroom that Saturday afternoon was a ***dry*** mop, *not* a wet mop.[19] As Vargas explained in her contemporaneous statement, she had the mop, but it was *drying* the water drops.[20] Naturally, only a dry mop can dry and/or wipe away water droplets, as a wet mop necessarily adds moisture to a floor surface.

And Plaintiff lacks any evidence to the contrary concerning any implication of wet mopping, admitting *she did not see any active mopping before or after she went into the stall, nor did she see a mop bucket in the restroom*:[21]

---

[18] Exhibit A, p. 35:16 – 36:5 (emphasis added).
[19] *See* Exhibit C-1, p. 5 (TCC 0006); *see also* certified translation of Vargas statement, attached hereto as **Exhibit D**.
[20] Exhibit C-1, p. 5 (TCC 0006); Exhibit D.
[21] Exhibit A, p. 36:10-13, 37:4-13, 53:17-19 (emphasis added).

**Q.** And … you said a cleaning woman mop in --
**A.** I didn't see her. I just felt -- she was mopping my feet.
…
**Q.** Okay. Did you see the mop before you went into the stall?
**A.** No, I didn't even know anybody was in there. …
**Q.** Okay. *Did you see [] a mop bucket anywhere either before or after you fell?*
**A.** ***No.*** They had a cart there, but I didn't see anybody.
**…**
**Q.** *Once you had come out of the stall, did you see her actively mopping anywhere?*
**A.** ***No.***

Moreover, Plaintiff admitted that she saw the cleaning cart upon her entry to the restroom, testifying she passed it on her way in, which signifies that she was aware of at least ongoing restroom tidying.[22] And speaking of the cleaning cart, the surveillance footage from outside the restroom area captured Ms. Vargas on her way into the ladies' room with said cleaning cart, and the video establishes that the cart did not contain a mop bucket or any indicia of a wet mop:[23]




[22] Exhibit A, pp. 37:12 – 38:7.
[23] Exhibit B-1, at timestamp 3:18:00 p.m. to 3:18:21 p.m. The cart remains visible at the doorway of the restroom after Ms. Vargas enters whenever the door is opened.

Simply put, there is no positive evidence of a wet mop being utilized in the subject ladies' restroom at the time of Plaintiff's fall.

Also telling, Plaintiff testified plainly that she did not have any trouble navigating the several parts of the restroom that she traversed:[24]

**Q.** [] *Had you had any problems entering the restroom?*
**A.** ***No, ma'am.***
**Q.** Okay. *How about any issues entering the stall itself?*
**A.** ***No, ma'am.***
**Q.** All right. *Any issues getting to the sink?*
**A.** ***No, ma'am.***

Further, the video footage shows the restroom was steadily trafficked in the time Ms. Vargas was performing her regular maintenance of same, and there is no evidence of any other slip-and-falls in the restroom at that time.[25]

And as noted above, the contemporaneously captured evidence illustrates that no less than three (3) "Caution Wet Floor" signs were visible to individuals utilizing this ladies' restroom:[26]










[24] Exhibit A, p. 42:25 – 43:7 (emphasis added).
[25] Exhibit B-1, timestamp 3:18:00 p.m. to 3:24:36 p.m. In the elapsed time between Ms. Vargas entering the restroom with the cleaning cart at 3:18:12 p.m. and Plaintiff entering the restroom at 3:24:36 p.m., no less than five (5) women enter and/or exit the restroom without incident.
[26] Exhibit C-1, pp. 9-11 (TCC 0010-0012). The images are screenshots of three photographs in the incident report.

In all, the record evidence reveals that Plaintiff will be unable to meet her burden of proof on at least one – if not all three – essential elements of her merchant liability claim against Treasure Chest, warranting summary dismissal.

## Law and Argument

### *I. Summary Judgment Standards*

Axiomatically, the summary judgment process set forth by Rule 56 of the Federal Rules of Civil Procedure is designed to eliminate trials on undisputed issues of fact. Summary judgment is required when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Once the moving party puts forth evidence which it believes demonstrates the absence of genuine dispute of material fact, the non-movant must do more than show that there is some metaphysical doubt as to the material facts. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-22 (1986). Of import, "the mere existence of *some* factual dispute will not defeat a motion for summary judgment[,] [as] Rule 56 requires that the fact dispute be *genuine* and *material*." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995) (emphasis in original). A factual dispute is considered genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party" and material only "if it might affect the outcome of the suit under the governing substantive law." *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014) (citing *Anderson*, 477 U.S. at 248).

While summary judgment evidence is viewed in the light most favorable to the non-moving party, speculation, conclusory allegations, and unsubstantiated assertions fail to satisfy that opposing party's burden, *Willis*, 61 F.3d at 315, and courts "do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid*

*Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (stating also that "[w]e resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy…"); *see also Stewart v. DG Louisiana, LLC*, No. 21-1580, 2023 WL 405447, at *2 (E.D. La. Jan. 25, 2023) (Ashe, J.) ("Yet, a court only draws reasonable inferences in favor of the nonmovant 'when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.'") (quoting *Little, supra*). Instead, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex Corp.*, 477 U.S. at 323).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (cleaned up). And that's the case here – Plaintiff bears the overall burden of proof at trial, so to avoid summary judgment dismissal where (as seen herein) Treasure Chest has pointed to an absence of evidence, she "is required to identify ***specific*** evidence in the record, and to articulate the '***precise*** manner' in which that evidence support[s] [her] claim." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)) (emphasis added).

"A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Brass v. Wal-Mart Louisiana LLC*, No. 3:22-CV-06146, 2023 WL 8723200, at *2 (W.D. La. Dec. 18, 2023) (Doughty, J.) (quoting *Celotex*, 477 U.S. at 323). Lastly, the jurisprudence discussed herein firmly establishes that claims involving Louisiana's Merchant Liability Statute – like Plaintiff's here – are ripe for summary adjudication.[27]

---

[27] *See generally* the summary judgment cases cited and discussed in Sections II and III, *infra*.

Considering the incontrovertible material facts and the governing law set forth herein, summary judgment is warranted.

## *II. Governing Law for Plaintiff's Claim*

"In a diversity case such as this one, federal courts apply state substantive law," and thus Louisiana law applies to Plaintiff's claims against Treasure Chest. *Thompson*, 2022 WL 17479771, at *2 (citing *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269 (5th Cir. 2009) and *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). It is undisputed that Plaintiff's fall occurred on the premises of Treasure Chest, which as a casino operator is considered a "merchant" under Louisiana law and thus falls within the purview of Louisiana's Merchant Liability Statute – La. R.S. 9:2800.6. *E.g.*, *Oliver v. Belle of Orleans, LLC,* 2021-0979 (La. App. 1 Cir. 4/8/22), 341 So.3d 774, 777; *see also Alvarado v. Boyd Gaming Corp.*, 759 F.Supp.3d 735, 738 (W.D. La. 2024) (applying the Merchant Liability Statute to negligence claims against Delta Downs).

Relative to the Merchant Liability Statute's application here, a merchant fundamentally owes a duty under Louisiana law to keep its premises, including its aisles, passageways, and floors, in a reasonably safe condition, with that duty encompassing a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage. La. R.S. 9:2800.6(A). "However, ***the merchant is not the insurer of its patrons' safety*** and is not liable for every accident that occurs on its premises." *Romano v. Jazz Casino Co., LLC*, No. CV 20-228, 2021 WL 3566310, at *3 (E.D. La. Aug. 12, 2021) (Ashe, J.), *aff'd sub nom. Romano v. Jazz Casino Co., L.L.C.*, No. 21-30554, 2022 WL 989480 (5th Cir. Apr. 1, 2022); *see also, e.g.*, *Hou v. PNK Lake Charles LLC*, No. 2:24-CV-00954, 2025 WL 1885656, at *2 (W.D. La. July 8, 2025) (Cain, Jr., J.). To that point, and as noted above, the mere occurrence of an accident on a merchant's premises cannot and does not serve on its own to establish actionable negligence. *E.g.*, *Degree*, 271 So.3d at 318 ("A merchant is

not absolutely liable every time an accident happens.").

Of note, the Fifth Circuit has observed that "the Louisiana Merchant Liability Act [] places a heavy burden of proof on plaintiffs in claims against a merchant for damages arising out of a fall on the premises." *Ferrant v. Lowe's Home Centers, Inc.*, 494 F. App'x 458, 460 (5th Cir. 2012) (quotation and marks omitted); *see also Barnett v. Wal-Mart Inc.*, No. 3:24-CV-00863, 2025 WL 377709, at *2 (W.D. La. Feb. 3, 2025) (Doughty, J.) ("[T]he Act is a decidedly pro-defendant statute.") (quotation and marks omitted); *Stewart*, 2023 WL 405447, at *3 ("The Fifth Circuit has observed that this 'statute places a heavy burden of proof on plaintiffs in slip and fall cases,' which cannot be met by 'mere speculation or suggestion.'") (quoting *Bagley v. Albertsons, Inc.,* 492 F.3d 328, 330 (5th Cir. 2007) (cleaned up). Reflecting this "heavy burden of proof," the Merchant Liability Statute requires a plaintiff to prove a number of additional statutory elements on top of the traditional negligence components. *See* La. R.S. 9:2800.6(B); *e.g.*, *Stewart*, *supra* at *3.

Put another way, in addition to the hornbook negligence elements of duty, breach, causation and damages, a Louisiana merchant liability plaintiff must also present positive evidence proving the following three elements:

1. The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;

2. The merchant either created or had actual constructive notice of the condition which caused the damage, prior to the occurrence; and

3. The merchant failed to exercise reasonable care.

La. R.S. 9:2800.6(B); *Ferrant*, 494 F. App'x at 460; *White v. Wal-Mart Stores, Inc.*, 97-0393 (La. 9/9/97), 699 So.2d 1081, 1083. "Because the plaintiff has the burden of proving all three elements under the LMLA, 'the failure to prove any is fatal to the claimant's cause of action.'" *Peterson v.*

*Brookshire Grocery Co.*, 751 F. App'x 533, 535 (5th Cir. 2018) (quoting *White*, *supra*).

Crucially, "[t]he burden of proof does not shift to the defendant at any point and failure to prove any one of these elements negates a plaintiff's cause of action." *Campbell v. Texas Roadhouse, Inc.*, No. 1:19-CV-00840, 2021 WL 2604615, at *3 (W.D. La. June 24, 2021) (Joseph, J.) (quoting *Melancon v. Popeye's Famous Fried Chicken*, 10-1109 (La. App. 3 Cir. 3/16/11), 59 So.3d 513, 515); *see also, e.g.*, *Broussard v. Outback Steakhouse of Fla., Inc.*, 146 F. App'x 710, 712 (5th Cir. 2005). Relatedly, Louisiana law reinforces that "[a] defendant merchant does not have to make a positive showing of the absence of the existence of the condition prior to the fall. Notwithstanding that such would require proving a negative, the statute simply does not provide for a shifting of the burden." *Swatt v. Wal-Mart Stores, Inc.*, 21-66 (La. App. 5 Cir. 12/29/21), 334 So.3d 1054, 1059 n.2. To the contrary, "[a] plaintiff in a Louisiana premises liability claim involving a merchant 'must make a positive showing of the existence of the condition prior to the fall.'" *Dixon v. Haza Foods of Louisiana, LLC*, No. CV 20-389, 2021 WL 2042219, at *2 (E.D. La. May 21, 2021) (Ashe, J.) (quoting *Leger v. Wal-Mart La. LLC*, 343 F. App'x 953, 2009 WL 2900250, at *1 (5th Cir. Sept. 10, 2009)), *aff'd sub nom. Dixon v. Haza Foods of Louisiana, L.L.C.*, No. 21-30316, 2022 WL 1184376 (5th Cir. Apr. 21, 2022).

Application of these jurisprudential tenets to the undisputed facts here leads to the inevitable conclusion that Plaintiff cannot meet her burden of presenting sufficient positive evidence as to essential elements under the Merchant Liability Statute. Because "a genuine dispute as to material fact must exist for *each* of these elements for [Plaintiff's] claims to survive summary judgment," and Plaintiff cannot clear that hurdle, dismissal is warranted. *King v. PetSmart LLC*, No. 3:21-CV-00225, 2023 WL 7930074, at *4 (W.D. La. Nov. 16, 2023) (emphasis added); *see also*,

*e.g.*, *Miller*, 98 F.4th at 216-18; *Holladay v. Lowe's Home Centers, L.L.C.*, No. 23-30769, 2024 WL 3688533, at *1-4 (5th Cir. Aug. 7, 2024).

### *III. Relative to the threshold merchant liability element, the lack of evidence to establish the existence of an unreasonably dangerous condition is fatal to Plaintiff's claim.*

"[T]he fact is that [plaintiff's] burden in proving merchant liability requires her to first prove that a condition existed **and** that it presented an unreasonable risk of harm." *Thibodeaux v. Brookshire Grocery Co.*, 2018-313 (La. App. 3 Cir. 11/7/18), 2018 WL 5845050, at *3 (citing La. R.S. 9:2800.6 and *Hess v. Schwegmann Giant Super Markets, Inc.*, 595 So.2d 754 (La. App. 4 Cir. 1992)). Importantly, "[a] plaintiff cannot rely on mere speculation or possibility alone to demonstrate that a condition existed prior to their fall and that such condition caused their injury." *King*, 2023 WL 7930074, at *4; *see also, e.g.*, *Burnett v. Lucky Nails, LLC*, 2014-1577 (La. App. 1 Cir. 6/5/15), 2015 WL 3613089, at *4 ("Speculative allegations as to the presence of a substance on a floor are insufficient to defeat summary judgment.").

Here, Plaintiff has never firmly alleged what supposed substance caused her fall, never mind presented any evidence of same. Plaintiff's Petition merely alleged that she "slipped and fell in the ladies' room" at Treasure Chest" and claimed she "slipped on a slippery substance covering the restroom floor."[28] Then, in her discovery responses, she averred that "the housekeeper started mopping under [her] stall," but she conceded she did not fall in that stall and instead slipped and fell as she was walking to the sink area to wash her hands."[29] But then, in her deposition, she admitted that she had already finished washing and drying her hands before she fell, such that she slipped and fell on her way out of the restroom, while conceding that *she did not see anything on the*

[28] R. Doc. 1-1, ¶¶ VI and IX.
[29] *See* **Exhibit E**, Answer to Interrogatory No. 5.

*floor*.[30] She has also conceded that *she never saw any active mopping anywhere in the restroom*, only having a spotted a mop while she was in the stall – yet, she did not fall in the stall.[31] And to the extent she intends to blame mopping for the fall, Treasure Chest has presented evidence that any mop Plaintiff saw was a *dry mop*, not a wet mop.[32] Further yet, Treasure Chest security personnel investigated the restroom after the incident and did not observe any fall-causing condition.[33]

Considering that a merchant liability plaintiff's claim cannot depart the station without proof of the condition that he or she alleges to have caused the fall, Plaintiff's claim here is in trouble from the get-go. The apposite caselaw underscores how Plaintiff's inability to identify the alleged hazard is fatal to her claim and merits dismissal of the lawsuit. *E.g.*, *Johnson v. Dolgencorp, L.L.C.*, 22-30173, 2022 WL 17409608, at *2 (5th Cir. Dec. 2, 2022) ("The Louisiana Merchant Liability act requires a plaintiff to affirmatively identify the damage-causing condition, which Johnson has failed to do."); *see also*, *e.g.*, *Wilson*, 354 So.3d at 46-48 (affirming summary judgment on merchant liability claim where plaintiff failed to present evidence concerning the existence of a hazardous condition and defendant showed that it conducted a post-fall inspection that yielded no evidence of any such condition); *Swatt*, 334 So.3d at 1060; *Burnett, supra* (affirming summary judgment for merchant where plaintiff "did not notice any water or liquid on the floor that day" and "she admitted that there was no water on the floor when she slipped").

And if Plaintiff cannot satisfy even the threshold essential element of proving *with evidence* what condition existed and caused her fall, then it follows that she cannot prove that the supposed condition constituted an unreasonable risk of harm. *Reed v. Home Depot USA, Inc.*, 37,000 (La.

---

[30] Exhibit A, p. 35:21 – 36:5.
[31] Exhibit A, pp. 35:3-20, 37:4 – 39:19.
[32] Exhibit C-1 at TCC 0006; Exhibit D.
[33] Exhibit C-1, pp. 6-7 (TCC 0007-0008).

App. 2 Cir. 4/9/03), 843 So.2d 588, 591–92 ("We would only note that without more evidence, the fact that the plaintiff slipped and fell on the defendant's premises does not compel a finding that the premises were unreasonably dangerous."), *writ denied,* 2003-1638 (La. 10/10/03), 855 So.2d 345.

Because Plaintiff cannot meet her evidentiary burden on the threshold merchant liability element, summary dismissal is warranted.

## ***IV. Plaintiff lacks positive evidence to satisfy the "creation or notice" element of the Merchant Liability Statute, which likewise compels summary judgment.***

*a. Without evidence to show the source of the alleged condition, Plaintiff lacks evidence sufficient to establish creation of the supposed fall-causing condition.*

A ubiquitous theme in federal jurisprudence, speculative assertions are patently insufficient to meet a non-movant's burden on summary judgment, and the jurisprudence demonstrates that tenet carries especially vivid significance vis-à-vis merchant liability claims. To the extent Plaintiff suggests Treasure Chest created the condition in the restroom, it bears mention that, assuming *arguendo* the existence of a condition,[34] merely asserting that the presence of liquid was the fault of Treasure Chest is also insufficient to get past summary judgment, since "there must be proof that the merchant is *directly* responsible for the spill or other hazardous condition." *Gray v. Wal–Mart La., L.L.C.,* 484 F. App'x 963, 966 (5th Cir. 2012) (emphasis added) (citation omitted).

"As a threshold matter, a plaintiff arguing that the merchant created a slipping or tripping hazard must show the source of the substance or object constituting the hazard." *Bearden v. K &*

[34] For the purposes of this Section, Treasure Chest assumes *arguendo* the existence of some condition that Plaintiff blames for her fall but does not concede that such condition presented an unreasonable risk of harm that was reasonably foreseeable.

*A of Monroe, LLC*, 55,746 (La. App. 2 Cir. 7/17/24), 399 So.3d 515, 522. Here, Treasure Chest has presented evidence that there was no wet mopping happening at the time of Plaintiff's fall,[35] and Plaintiff admitted that she did not see any mop bucket in the restroom nor any active wet mopping ongoing while she was in there.[36] Furthermore, to the extent Plaintiff somehow blames the dry mop for her fall, the only place in which she saw the dry mop active was in the stall she was using, *which is not where she fell,*[37] and she conceded that she did not fall until *after* she washed her hands, dried them, and was on her way out of the restroom.[38] Plaintiff also admitted that she did not see any water on the floor before she fell, so she cannot even personally testify as to what substance (if any) may have caused her to fall.[39] Moreover, Treasure Chest's post-incident investigation confirmed that there was no fall-causing condition or contributing factor observed,[40] and the video footage shows that Ms. Vargas's cleaning cart did not contain a mop bucket.[41]

Thus, given the evidence establishing the lack of wet mopping, any argument that Treasure Chest created some sort of liquid-on-the-floor condition would amount to nothing more than rampant speculation, and the topical jurisprudence in this Circuit confirms that summary judgment dismissal is merited where a plaintiff can offer ***only*** speculation, without any actual probative evidence as to creation of the hazard (like here). *E.g.*, *Bearb v. Wal-Mart Louisiana, Ltd.*, 534 F. App'x 264, 265 (5th Cir. 2013) (affirming summary judgment for merchant, noting "the absence of any *facts* in the record to support their claims" of how the water got on the floor); *Mohammad v. PF Chang China Bistro*, 548 F. App'x 236, 238 (5th Cir. 2013) (affirming summary

[35] Exhibit C-1 at TCC 0006; Exhibit D.
[36] Exhibit A, p. 36:10-13, 37:4-13, 53:17-19.
[37] Exhibit A, pp. 37:4 – 39:19.
[38] Exhibit A, p. 35:3-20.
[39] Exhibit A, p. 35:21 – 36:5.
[40] Exhibit C-1, pp. 6-7 (TCC 0007-0008).
[41] Exhibit B-1.

judgment for merchant, reiterating that "[m]ere assertions, without significant probative evidence, are not sufficient to survive summary judgment," ultimately finding the lack of any direct evidence of plaintiff's theory to be fatal to the claim); *Avila v. PNK (Lake Charles), LLC*, No. CV 2:20-00331, 2022 WL 402926, *3-5 (W.D. La. Feb. 9, 2022).

Likewise here, as there is no evidence that Treasure Chest created the wet floor condition in the ladies' room, no issue of material fact can exist regarding any alleged creation of the condition by Treasure Chest. *E.g.*, *Ferrant*, 494 F. App'x at 462; *Campbell*, 2021 WL 2604615, at *3 ("However, to the extent Plaintiffs allege that [merchant] created the hazardous condition, it is mere speculation unsupported by any evidence in the record.").

*b. Plaintiff lacks evidence that Treasure Chest had actual notice of any existing hazard on the floor of the ladies' restroom.*

Lacking proof that a merchant created the purportedly hazardous condition at the root of a merchant liability claim, a plaintiff can only avoid summary judgment by presenting positive evidence that the merchant had actual or constructive notice of the alleged condition. *Cf. Duncan*, 863 F.3d at 410. Starting with actual notice, Plaintiff has not identified what, if any, liquid or substance she slipped on, but she readily conceded that she did not see anything on the floor before she fell, going so far as to volunteer that the walkway looked "clear" to her and that "[i]t ain't had nothing on there[.]"[42] Nor is there any evidence of any incident prior to Plaintiff's fall that would have alerted Treasure Chest personnel as to an existing hazard on the restroom floor in the vicinity of Plaintiff's exit path; in fact, Treasure Chest has presented evidence that Ms. Vargas was in the restroom performing a regularly scheduled check of the facilities,[43] such that she was not called

[42] Exhibit A, p. 35:21 – 36:5.
[43] Exhibit C-1 (at TCC 0004); *see also* Exhibit B-1.

there for a specific spill or problem.

Of note, the only evidence concerning notice of anything on the floor around the time of Plaintiff's fall is Ms. Vargas's statement that she was drying drops of water around the time of Plaintiff's own hand-washing and subsequent fall.[44] However, Plaintiff expressly testified that she did not see anything on the floor before her fall, and presumably, Plaintiff is not blaming her fall on any water she contemporaneously dripped herself (as that would vitiate her claim on its own.)

In short, there is no evidence whatsoever that Treasure Chest had actual notice *of the supposed fall-causing condition* in the ladies' room before Plaintiff's fall, as even if there were some water droplets on the floor, Plaintiff did not testify that she fell on any such water droplets that Ms. Vargas had been drying. *See, e.g.*, *Alvarado v. Boyd Gaming Corp.*, 759 F.Supp.3d 735, 740 (W.D. La. 2024) ("Both Plaintiffs stated that they did not know how the pickle got on the floor or how long it had been there, and the surveillance video does not indicate any incidents prior to Alvarado's fall that would have alerted Defendant's personnel. Nor is there any other relevant evidence in the record. Thus, there is no genuine dispute of material fact regarding whether Defendant had actual notice of the existence of the allegedly hazardous condition on the floor.") (internal record citations omitted).

*c. Plaintiff likewise lacks evidence that Treasure Chest had constructive notice of any unreasonably dangerous condition in the ladies' room at the pertinent time.*

Given the dearth of affirmative proof on the creation and actual notice fronts, only constructive notice would remain as an alternative for this requisite second element. Considering that a "plaintiff bears 'an onerous burden' in satisfying this element of his claim," Plaintiff here cannot do so. *Bui v. PNK Lake Charles LLC*, No. 2:23-CV-01688, 2024 WL 4753275, at *2 (W.D.

[44] *See* Exhibit C-1, p. 5 (TCC 0006); Exhibit D.

La. Nov. 12, 2024) (Cain, Jr., J.) (quoting *Scott v. Dillard's, Inc.*, 14-755 (La. App. 5 Cir. 3/11/15), 169 So.3d 468, 472 ("Proof of constructive knowledge in these cases is an onerous burden.")).

To that end, the jurisprudence is crystal clear that summary judgment is warranted if a plaintiff is unable to establish that the defendant-merchant had *at least* constructive notice of the condition *prior to* the accident. *E.g.*, *King*, 2023 WL 7930074, at *6 ("[T]he plaintiff must [] 'prove the condition existed for some time period prior to the fall' to survive summary judgment."); *Oliver*, 341 So.3d at 779; *Swatt,* 334 So.3d at 1059; *Pellegrin v. Louisiana-I Gaming*, 11-1021 (La. App. 5 Cir. 4/24/12), 93 So.3d 645, 647-48.

Reflected by the cases cited herein, "constructive notice" requires Plaintiffs to prove "the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." La. R.S. 9:2800.6(C)(1). In the seminal case of *White v. Wal-Mart*, the Louisiana Supreme Court explained that the statute's definition of constructive notice embeds a temporal element ("such a period of time"), such that La. R.S. 9:2800.6 does not permit the inference of constructive notice absent some **affirmative** showing of this temporal requirement. 699 So.2d at 1084; *Babin,* 764 So.2d at 40; *Campbell*, *supra* at *4. Crucially, that means the plaintiff must make a *positive showing* of the existence of the condition **prior to the fall** for "such a period of time," although there is no bright line time period. *White,* 699 So.2d at 1084.

"Mere speculation or suggestion" is insufficient to meet a plaintiff's burden on the constructive notice element, and "[c]ourts will not infer constructive notice for the purposes of summary judgment where the plaintiff's allegations are no more likely than any other potential scenario." *Peterson*, 751 F. App'x at 536; *see also Hayes v. Outback Steakhouse of Fla., L.L.C.*, No. 1:22-CV-00494, 2023 WL 8284395, at *2 (W.D. La. Nov. 30, 2023) (Joseph, J.); *Johnson, supra*;

*Campbell, supra*. Even if Plaintiff could show that a foreseeably hazardous condition existed, simply showing existence without the additional showing that said condition existed for "some time" before the fall does not satisfy the burden of proving constructive notice as mandated by the statute, and in turn compels summary dismissal. *E.g.*, *Peterson, supra*; *White, supra.*

Once again, "to survive summary judgment, a plaintiff must satisfy the 'prerequisite' of putting forth 'some positive evidence ... of how long the condition existed prior to the fall.'" *Miller*, 98 F.4th at 216. Yet Plaintiff has **no positive evidence** that would allow her to satisfy that hefty burden of proving constructive notice as mandated by La. R.S. 9:2800.6 because there is no evidence from which to discern, never mind establish, how long any alleged wet or slippery condition was present on the floor prior to her accident.

At risk of repetition, Plaintiff was unable to identify specifically what caused her fall, as she admitted she did not see water, wetness, or anything else on the floor where she fell and testified the floor "ain't had nothing on there[.]".[45] That admission alone vitiates Plaintiff's ability to meet her burden as to constructive notice, which warrants summary dismissal as she lacks the requisite "positive evidence." *E.g.*, *Walthall v. E-Z Serve Convenience Stores, Inc.*, 988 F.Supp. 996, 999–1000 (E.D. La. 1997) (granting summary judgment where "[plaintiff] said she did not recall seeing water prior to her alleged fall," "plaintiff could not affirmatively state whether she noticed water on the floor prior to her fall," and thus "plaintiff [wa]s unable to establish that any water, much less a puddle of water, existed prior to her alleged slip and fall, as is required by La.R.S. 9:2800.6(B)(2)"), *aff'd,* 146 F.3d 868 (5th Cir. 1998).

Without positive evidence as to what substance (if any) was on the floor and when it got

---

[45] Exhibit A, p. 35:21 – 36:5.

there, Plaintiff's claim fails as a matter of law. *E.g.*, *Lemelle, supra*; *Avila, supra*.

### *V. Plaintiff lacks evidence that Treasure Chest failed to exercise reasonable care, which further compels summary judgment.*

Finally, Plaintiff lacks evidence that Treasure Chest failed to exercise reasonable care relative to her fall in the ladies' room on 13 April 2024, which is equally damaging to the viability of her merchant liability claim.

"Under La. R.S. 9:2800.6, a merchant is required to exercise reasonable care to protect those who enter his establishment, to keep his premises safe from unreasonable risks of harm, and to warn persons of known dangers." *Foster*, 193 So.3d at 295. The theme of "reasonableness" permeates this inquiry, in that courts look to a variety of factors to determine whether a business's protective measures were reasonable in light of the circumstances of the case, including the risk involved, the area of the premises, and others. *E.g.*, *Millet v. Moran Foods, LLC*, 23-227, p. 4 (La. App. 5 Cir. 3/13/24), 384 So.3d 1074, 1077. And where an allegedly dangerous condition may happen to exist, a merchant satisfies its duty of reasonable care to its patrons where "protective measures were taken to warn customers of the potential hazard." *Mays v. Circle K Stores, Inc.*, 2013-1397 (La. App. 1 Cir. 3/24/14), 2014 WL 1175384, at *3.

In the case *sub judice*, there are two discrete evidentiary paths to affirmatively establish that Treasure Chest exercised reasonable care vis-à-vis the ladies' restroom at issue (even despite Treasure Chest not bearing the burden to exculpate itself) – first, the ongoing exercise of reasonable care by Ms. Vargas in checking and maintaining the restroom, and second, the placement of the multiple "Caution Wet Floor" signs affixed to various parts of the restroom.

Starting with the former, Louisiana courts have directed that "[t]he merchant's duty of care requires that reasonable protective measures, including periodic inspections, are undertaken

to ensure that the premises are kept free from substances that might cause a customer to fall." *Otero v. Winn-Dixie Stores, Inc.*, 25-232 (La. App. 5 Cir. 12/10/25), 428 So.3d 796, 801; *see also Jones v. Brookshire Grocery Co.*, 37,117 (La. App. 2 Cir. 5/14/03), 847 So.2d 43, 51 (noting that it "agree[d] with the trial court's statement that … [t]he law only requires reasonable protective measures including periodic inspections"). Here, the testimony, statements, and video footage establish that Ms. Vargas, a Treasure Chest EVS employee, was actively tending to the restroom at the time of Plaintiff's fall – *i.e.*, conducting a "periodic inspection" that equates to the exercise of reasonable care.[46] The video footage unmistakably shows Ms. Vargas entering the restroom with the cleaning cart,[47] and Plaintiff testified as to her awareness of the presence of both the cleaning cart and (eventually) Ms. Vargas in the restroom, testifying that she saw and walked by the cleaning cart on the way in and felt the (dry) mop on her feet while she was in the stall.[48] Further, the Incident Report includes a "sweep sheet" reflecting that Ms. Vargas had initialed as to her completed check of the ladies' Main Deck restroom at 3:40 p.m. (shortly after Plaintiff's accident).[49] Under these circumstances, Treasure Chest exercised reasonable care by virtue of the ongoing periodic inspection and maintenance of the ladies' room at issue. *See Jackson v. Delchamps, Inc.*, 96-2417 (La. App. 1 Cir. 3/27/97), 691 So.2d 332, 335 (dismissing plaintiff's suit where "the record shows that Delchamps had in place a reasonable safety and inspection procedure, and monitored the inspections" and "[t]he plaintiff did nothing to dispute that evidence"), *writ denied*, 97-1126 (La. 6/13/97), 695 So.2d 977; *Briscoe v. Delchamps Supermarket Stores*, No. 94-3527, 1995

---

[46] Exhibits A, B, and C-1.
[47] Exhibit B-1.
[48] Exhibit A.
[49] Exhibit C-1, p. 3 (TCC 0004). As noted in the declaration of Scott Guidry, although the sweep sheet in the Incident Report is dated "4/14/2024," that date is a typographical error, and the sweep sheet initialed on the day of Plaintiff's accident was the one included in the Incident Report.

WL 115810, at *2 (E.D. La. Mar. 15, 1995) ("The court concludes from the uncontroverted Affidavits of Mr. Parker and Mr. Kastner that Defendant had adequate maintenance and inspection procedures which were implemented on the day in question."), *aff'd sub nom. Briscoe v. Delchamps Supermarket*, 71 F.3d 876 (5th Cir. 1995); *cf. Autry v. Vicari Enters., LLC*, 2022-1367, p. 11 (La. App. 1 Cir. 6/23/23), 2023 WL 4141228, at *6 (stating in the context of the predicate constructive notice discussion: "we find the defendants exercised reasonable care in checking the condition of the restroom…").

Moving to the latter route to reasonable care, the evidence also establishes three (3) "Caution Wet Floor" signs were affixed in the restroom to warn patrons of any potential slippery conditions.[50] Both state and federal courts in Louisiana have held, in the context of the Merchant Liability Statute, that the display of warning signs in a restroom or other wet-condition area constitutes the exercise of reasonable care to warn patrons of any possible hazards. *See, e.g.*, *Francois v. RaceTrac Inc.*, No. CV 24-781-SDD-EWD, 2025 WL 2664076, at *15-16 (M.D. La. Sept. 17, 2025) (granting summary judgment and finding: "The images establish that the RaceTrac used the appropriate signage to warn patrons such as Plaintiff of the wet condition of the floor. … Thus, the undisputed facts establish that RaceTrac followed its safety procedure and exercised reasonable care by placing three 'wet floor' signs to warn Plaintiff of the wet floor …"); *Douglas v. PNK (Lake Charles) LLC*, No. 2:17-CV-00817, 2019 WL 1368532, at *4 (W.D. La. Feb. 19, 2019) ("The placement of the signs establishes … that L'Auberge exercised reasonable care in notifying its patrons of the possibility of a wet floor in the restroom and in the entryway to the restroom. … Specifically, the evidence of appropriate signage on the video surveillance tape established that the

[50] Exhibit C-1, pp. 9-11 (TCC 0010-0012).

plaintiff failed to show that the casino's floors posed an unreasonable risk of harm or that L'Auberge did not exercise reasonable care. To the contrary, the video evidence established that L'Auberge took appropriate protective measures, constituting reasonable care under the circumstances to prevent the existence of a condition presenting an unreasonable risk of harm."), *report and recommendation adopted sub nom. Douglas v. PNK (Lake Charles) LLC*, No. 2:17-CV-00817, 2019 WL 1339233 (W.D. La. Mar. 25, 2019); *Mays*, 2014 WL 1175384, at *3 ("The trial court viewed Circle K's placement of the warning sign as exercising reasonable care, and we agree. Ms. Mays could not avoid seeing the sign when she entered the store, and she saw the warning sign before she reached the slippery area of the floor.").

And importantly, the Fifth Circuit has held that it is the existence and placement of the signs that controls the "reasonable care" inquiry on this front, *not* whether the plaintiff admitted to having seen them. *Foreman v. Circle K Stores, Inc.*, 766 F. App'x 165, 168 (5th Cir. 2019) (affirming summary judgment for merchant where evidence established existence of three warning signs and holding that "[i]n short, Circle K did not act negligently, regardless whether Foreman saw the signage."). Thus, it is of no moment that Plaintiff here could not remember whether she saw the posted signs or not – she could not dispute their existence,[51] their placement in the restroom is established by the images included in the Incident Report and submitted herewith,[52] and her testimony reveals she necessarily was in the vicinity of and/or passed by one or more of the photographed signs prior to her fall.[53]

In all, Plaintiff lacks *evidence* to contradict the evidence presented by Treasure Chest on yet

[51] Exhibit A, p. 51:11 – 52:1.
[52] Exhibit C-1.
[53] *See generally* Exhibit A.

another of her essential elements. Because she will not be able to establish that Treasure Chest failed to exercise reasonable care, summary judgment is proper.

**Conclusion**

As the Fifth Circuit noted in *Derousselle, supra*, a lack of evidence is not to be mistaken for a genuine dispute of material fact. 701 F. App'x at 351. And the mere fact that Plaintiff alleges she slipped and fell in the restroom at Treasure Chest does not give rise to liability under Louisiana law. *E.g.*, *Hannon*, 2022 WL 1037809, at *1 ("A store owner is not liable every time an accident happens in the place where he/she conducts business operations.") (citing *Bennett v. Brothers Avondale, L.L.C.*, 15-37 (La. App. 5 Cir. 5/4/15), 170 So.3d 1179, 1182).

Instead, Plaintiff bears the heavy burden of presenting ***positive evidence*** of all requisite elements of a claim under the Louisiana Merchant Liability Statute, a burden that she cannot meet here. Without question, Treasure Chest has met *its* initial burden to show an absence of proof for one or more essential elements to Plaintiff's case, and the narrative and evidence set forth herein illustrate already that she will not be able to satisfy the now-shifted burden. Namely, she lacks any positive evidence that would serve to satisfy each and every essential element of the statute, and that evidentiary void is dispositive here. As a matter of hornbook law, "[m]ere speculation is not enough to survive a motion for summary judgment[,]" and Plaintiff's lack of evidence is fatal to her suit. *Brass*, 2023 WL 8723200, at *8.

Consequently, in line with Federal Rule of Civil Procedure 56, Plaintiff's suit against Treasure Chest should be dismissed as a matter of law, with prejudice.

Respectfully submitted,

**MURPHY, ROGERS, SLOSS,**
**GAMBEL & TOMPKINS**

*/s/ Tarryn E. Walsh*
John H. Musser, V (#22545)
jmusser@mrsnola.com
Tarryn E. Walsh (#36072)
twalsh@mrsnola.com
701 Poydras Street, Suite 400
New Orleans, Louisiana 70139
Telephone: (504) 523-0400
Facsimile: (504) 523-5574

***Attorneys for Defendant,***
***Treasure Chest Casino, L.L.C.***