UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RACHEL HILLS | § | CIVIL ACTION NO. 25-838 BWA-JVM |
| VERSUS | § | SECTION: "M"<br>JUDGE BARRY W. ASHE |
| TREASURE CHEST CASINO, LLC,<br>ET AL. | § | DIVISION (1)<br>MAG. JUDGE JANIS VAN MEERVELD |
| | | ***Jury Trial Requested*** |

**PLAINTIFF RACHEL HILLS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

MAY IT PLEASE THE COURT:

Plaintiff, Rachel Hills ("Hills"), respectfully submits this Memorandum in Opposition to the Motion for Summary Judgment (Rec. Doc. 21) filed by the Defendant Treasure Chest Casino ("TCC"). TCC's motion is without merit and should be denied.

Genuine issues of material fact exist regarding TCC's liability under Louisiana law. Material factual disputes between the testimony of the only two witnesses (the plaintiff, Hills, and TCC's housekeeper, Ms. De Olmedo) to this incident abound, e.g., (1) whether mopping was occurring just prior to Hills' fall, (2) whether De Olmedo's mopping made Hills' shoes wet and the area around her shoes under the restroom stall, and (3) whether Hills' herself spilled water onto the floor in the area in which she fell *or* rather as Hills' maintains whether the restroom floor was already "wet and damp" which was caused by the mopping De Olmedo was performing.[1]

---

[1] Hills' has testified that the housekeeper (De Olmedo) mopped under the restroom stall while Hills was seated on the toilet and that her shoes were made wet by that mop. De

Plaintiff Rachel Hills (Hills) sets forth the following evidentiary support for her claims against Treasure Chest Casino (TCC):

(1) TCC's housekeeping employee, Dinora Vargas de Olmedo, used a mop, mopped Hills' tennis shoes, *wetting* Hills shoes, while Hills was in the bathroom stall just prior to Hills' fall a few feet away;[2]

(2) TCC admits in testimony that mopping in the restroom *while* patrons are present in the restroom is a violation of TCC's housekeeping and safety policy;[3]

(3) TCC admits in testimony that mopping in a bathroom while patrons are present is unsafe because it creates a slip and fall hazard;[4]

(4) TCC admits in testimony that a patron's shoes should not be mopped in a bathroom stall and that such an action places the patron at risk of slipping and

---

Olmedo has testified she did not mop under the stall or over Hills' feet. De Olmedo maintains that she was was just holding a *dry* mop, *and was not* actively using the mop on the floor. By contrast to Hills, De Olmedo has testified that Hills slipped in water *that Hills' spilled* onto the floor while washing her hands at the sink. Hills denies spilling any water onto the floor.

[2] Please refer to Hills' Exhibit A(5-10), Affidavit of Rachel Hills; Exhibit B, Answers to Interrogatories of Rachel Hills, No. 7. It a reasonable inference that if the mop made Hills' shoes wet, the same mop would have to have made the area around her shoes wet as well as wherever that mop passed on the floor. Hills' provides evidence that (1) her shoes were wet from the mop and (2) that after she fell outside of the stall, her leggings were wet. "The court draws reasonable inferences in favor of the nonmovant when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." (Emphasis Added) *See Palmer v. Fam. Dollar Stores of La., LLC,* No. 24-2706, 2025 U.S. Dist. LEXIS 184168, at *3 (E.D. La. Sept. 18, 2025) *(citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).*

[3] Exhibit C, Deposition of Dinora Vargas de Olmedo, pp. 12 - 15; Exhibit D, 30b6 deposition of TTC, Randy LeGarde, p. 49.

[4] Exhibit D, 30b(6) Deposition of TCC, Randy LeGarde, p. 28:2-22.

falling;

(5) It is undisputed that Hills' slipped and fell a few feet away from the bathroom stall. It is also undisputed that Hills' leggings were wet after her fall.[5]

## I. FACTUAL BACKGROUND

### A. The Incident

On April 13, 2024, Hills was a patron at the Treasure Chest ("Casino'). She and her partner, Roger O'Neal, had arrived at the Casino around 3:20 pm. After approximately 10 minutes in the Casino, Hills went to the ladies' restroom located on the main deck. There was no yellow warning tape across the door or any other indication that the restroom was temporarily closed.[6] Upon entering the restroom, she entered the first stall to use the toilet.[7] While seated on the toilet, a mop came under the stall and mopped her shoes.[8] Hills had not been warned about mopping being performed.[9] De Olmedo mopped the floor of the stall and all over Hills' shoes.[10] Hills then yelled "Hey, I'm in here."[11] The mopping into the stall stopped - clearly, until Hills

---

[5] Exhibit E, Deposition of Rachel Hills, pp. 35:21- 36:2. (Although she did not see any wetness on the floor at that spot before she fell because water is clear, when she got up her "pants and stuff were wet."

[6] Exhibit A (1-4)

[7] Exhibit E, Deposition of Rachel Hills, p. 35:3-14; Exhibit A(5).

[8] Exhibit E, Deposition of Rachel Hills, p. 35:3-14; p. 36:10-20; Exhibit A(6)

[9] Exhibit A(7)

[10] Exhibit E Deposition of Rachel Hills, p. 46:18-23; p. 47:7-19; See Exhibit A(5-6)

[11] Exhibit E, Deposition of Rachel Hills, p. 36:15-20. See Exhibit, A7.

alerted her, De Olmedo was unaware that Hills was in the stall while she was mopping.[12] Hills' shoes were wet from being mopped.[13] Shortly after being hit with the mop, Ms. Hills exited the stall and stepped toward the sink (a few feet away).[14] She washed and dried her hands.[15] She did not spill any water on the floor.[16] As Hills turned to exit, she slipped and fell.[17] De Olmedo was standing near the exit with a mop in her hands.[18] De Olmedo attempted to help Hills up from the floor and Hills slipped and fell again.[19] She asked De Olmedo to call someone to come help her.[20] De Olmedo replied she did not have a phone.[21] Hills was then able to use the counter and cart to get herself up.[22] When she stood up, Hills leggings were wet.[23] She exited the restroom and she reported the incident to security.[24]

As a result of her fall, Hills sustained serious and disabling injuries to her neck and lower

---

[12] Exhibit A(7), Affidavit of Rachel Hills.

[13] Exhibit A8; Exhibit B, Answers to Interrogatories of Rachel Hills, No. 6.

[14] Please see Exhibits A(9).

[15] Ex A(9)

[16] Ex A(11)

[17] Ex A(10)

[18] Ex A (11)

[19] Exhibit E, p.41:3-15 ; Ex A (12)

[20] Ex A (13).

[21] *Id.*

[22] *Id.*

[23] Exhibit E, pp. 35:21- 36:2; Ex. A(14).

[24] Exhibit E, p. 41:17-22; Ex A (15).

back. She is permanently disabled and lost her job with Lowe's of twenty years. She remains under the care of her treating physicians. She has undergone multiple pain management procedures and has been recommended for cervical surgery by Dr. Najeeb Thomas.

**B. TCC's Restroom Mopping Policy and De Olmedo's Routine**

De Olmedo testified that TCC trained her as follows:

For mopping, she "would have to close off the bathroom, put that yellow thing to close it off...and never mop when there was people inside the bathroom."[25] Casey, her former boss at TCC, taught her "to always take two mops: one that was dry, and one that we were going to mop with. So we would first pass the mop, and then we would do the second one that was dry." [26] She was instructed to "always make sure that no one was in the bathroom before you mopped."[27] To prevent anyone from entering when mopping was occurring, a yellow tape was placed across the door. This was not done here.

TCC confirmed Olmedo's testimony and admitted (1) that mopping the restroom if a patron is present is unsafe, (2) that patron has a reasonable expectation that their feet won't be mopped while their in a restroom stall, (3) that if a patron's feet were mopped in that position, it places them in danger of slipping and falling.[28]

Olmedo denied that she mopped Hills shoes. Olmedo agreed it is dangerous to mop

---

[25] Exhibit C, p.12:6-18.

[26] Exhibit C, page 13:6-14

[27] Exhibit C, page 13:15-18.

[28] Exhibit D, Legarde, pp. 28:12 - 29:7. Exhibit F, Deposition of Scott Guidry, pp 48:19 - 49:4 (Lead Security / Incident Investigator for TCC, Guidry testified that it is not safe to mop with a patron in the restroom.

someone's feet because it could cause a fall. Exhibit C, p. 33:4-11. Although Olmedo denies mopping at the time of Hills incident, Olmedo agreed that it was routine for her to mop the ladies restroom about an hour before her shift ends which coincides with the timing of this incident. Exhibit C, p. 43:8-19. See also Exhibit G.

**C. TCC's "investigation" of the Incident**

Hills' incident was reported to Lead Security on duty, Scott Guidry. Guidry's actions consisted of getting a written statement from Hills, a written statement from De Olmedo, inputting data into a "Incident File Full Report" and filling in a "Boyd Gaming Incident Investigation Checklist, then visually taking a look at the restroom and taking pictures. Guidry admitted that he could not state when he actually made the visual inspection or took the photographs of the restroom scene in relation to Hills injury.[29] In fact, Guidry agreed it could have been anywhere from 20 minutes to an hour later. The passage of that much time negates any value to Guidry's visual review of the restroom and his conclusions that the restroom floor was not wet, since the bathroom continued to be cleaned (and used) in the interim.[30] As for the photographs Guidry took of the scene, Guidry admits from photographs themselves you cannot discern whether the floor was wet or dry.[31] Guidry's "investigation" was not in keeping with TCC incident investigation policy and procedure as Guidry's visual inspection of the scene and

---

[29] Exhibit F, Deposition of Scott Guidry, p. 43:1 - p.44:14 (Guidry could not state when he did the visual of the accident scene or took the photographs - it could have been 20 or an hour following Hills fall.) We do know that his report was completed around 5:27 pm so the visual and photos would have been accomplished before 5:27 pm.

[30] Exhibit G, TCC's "Clean Sweep Sheets" show that the restroom was again serviced at 3:40 pm (about ten minutes after the fall) and 4:33 pm (about an hour after the fall).

[31] Exhibit F, p.57:14 - 58:10.

the photographs should have been taken *with Hills present* immediately after her fall.[32] Guidry was clear in his testimony that he met with Hills in his office and stayed with her until she left. He is uncertain as to when after she departed, that he went to the restroom and photographed.[33] Today, as part of production from the 30(b)6 depositions, TCC produced a video with audio of Hills and Guidry's interaction in his office. The video is approximately 14 minutes long. The audio is admittedly very difficult to understand but it seems to be Hills reporting to Guidry that the cleaning lady was had put water on the restroom floor and was mopping the water when she hit Hills' shoes with the mop while Hills was in the restroom stall.[34] Guidry made no note regarding any of this information provided by Hills in his reports. At first Guidry denied being told about the mop hitting Hills but then qualified his answer that he did not recall any mention by Hills of the mopping incident.[35] By contrast to Guidry, when Hills was deposed and was asked what she told Security, Hills testified, "That I was in the stall using the bathroom, and she mopped my feet."[36]

## II. LAW AND ARGUMENT

### A. The Summary Judgment standard has not been met by TCC

---

[32] Exhibit H, Deposition of TCC, Lawrence Watson, head of security, p. 27:8 - p.30:13. (Mr. Watson explains that the proper procedure is to immediately have the patron should the area of the incident, point out the hazard so that it can be visualized and documented with photographs without the risk of the scene being altered, etc.).

[33] Exhibit F, p. 16:13:22; p.18:12-22; p. 22:1 - p.24:3; and p. 43:1 - p.44:14.

[34] Exhibit I, video clip of security office interaction (will be manually filed with the court).

[35] Exhibit F, p. 26:5-11

[36] Ex. E, p. 56:5-12.

Summary judgment is only warranted if the movant can prove "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[37] A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[38] "An issue is material if its resolution could affect the outcome of the action."[39] The Court must consider "all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[40] The evidence of the non-movant is to be believed.[41] "All reasonable inferences are drawn in favor of the non-moving party."[42] When taken as a whole, if the record "could lead a rational trier of fact to find for the non-moving party," summary judgment must be denied.[43]

**B. TCC's liability for its restroom floors under La. Stat. Ann. §9:2800.6**

Under Louisiana law, a merchant, like TCC, "owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably

---

[37] Fed. R. Civ. P. 56(a).

[38] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[39] *DIRECTV, Inc. v. Robson,* 420 F.3d 532, 536 (5th Cir. 2005).

[40] *See Palmer v. Fam. Dollar Stores of La., LLC,* No. 24-2706, 2025 U.S. Dist. LEXIS 184168, at *3 (E.D. La. Sept. 18, 2025) *(citing Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398–99 (5th Cir. 2008)).* "All facts and reasonable inferences must be viewed in the light most favorable to the non-movant." *Love v. Nat'l Med. Enterprises,* 230 F.3d 765, 770 (5th Cir. 2000).

[41] *Anderson,* 477 U.S. at 255. *See Ryder v. Union Pac. R.R. Co.,* 945 F.3d 294, 199 (5th

[42] *Zelaya v. Wal-Mart, Inc.,* 2023 U.S. Dist. LEXIS 76869, *2 (E.D. La. May 3, 2023)(*citing Little v. Liquid Air Corp., 37 F.3d 1069,1075 (5th Cir. 1994). See Anderson,* 477 U.S. at 255.

[43] *Kariuki v. Tarango,* 709 F.3d 495, 501 (5th Cir. 2013).

safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage."[44] TCC is liable to Hills if Hills fall was (1) due to a condition that presented an unreasonable risk of harm (and that risk was reasonable foreseeable), (2) the condition was created by TCC (or TCC had actual or constructive notice of the condition), and (3) TCC failed to exercise reasonable care.[45]

**1. TCC created the dangerous condition that caused Hills fall**

Hills meets her burden that TCC created the dangerous condition through direct or through circumstantial evidence. If the merchant's employee created the hazard, the notice / temporal requirement of the hazard does not apply.[46] **TCC created the slippery condition that caused Hills to fall**.[47] Specifically, Hills' affidavit, deposition testimony and answers to interrogatories show that (1) De Olmedo mopped Hills shoes (and the area around her shoes), (2) the mopping made her shoes wet, (3) Hills slipped and fell a few steps away, (4) upon

---

[44] La. Stat. Ann.§9:2800.6

[45] *Id.*; *See Thompson v. Winn Dixie Montgomery, Inc.,*

[46] *Deshotel v. Wal-Mart La., L.L.C.,* 850 F.3d 742, 747 (5th Cir. 2017). *Deshotel*, relying on Louisiana law agrees that under the Merchant Statute, when a defendant "maintains its own floors, the plaintiffs are not required to prove it had notice or constructive notice of the hazard. *Id., citing Savoie v. Sw. La. Hosp. Ass'n, 866 So.2d 1078, 1081 (La. App. 3rd Cir. 2004).*

[47] Assuming *arguendo* that the Court does not find that Hills can prove that TCC created the slip hazard, there is also evidence that TCC had at least actual or constructive notice of the hazard. La. Stat. Ann. §9:2800.6(C)(1) states that the while the presence of an employee in the vicinity of the condition does not alone constitute constructive notice, the presence of De Olmedo in the bathroom, holding a mop is undisputed, and is evidence that De Olmedo knew or should have known of the condition of the restroom floor. *See*, *Blackman v. Brookshire Grocery Co.,* 966 So. 2d 1185, 1190 (the presence of an employee in the vicinity of an unsafe condition is "certainly a significant factor to be considered in determing whether a merchant had constructive notice."

getting up from her fall, her leggings were wet (indicating that the floor was also wet were she slipped), and (5) De Olmedo was holding a mop. In addition to the Merchant Liability Statute, the evidence supports a breach of ordinary care under 2315 (for mopping in and around *occupied* restroom stalls, violation of TCC safety and cleaning policies and training); TCC is vicariously liable for the negligence of its employee, De Olmedo under Art 2320.

**2. Hills fell due to an unreasonable risk of harm**

Hills deposed TCC and its representative in charge of housekeeping, Randy Legarde, was produced to testify. TCC admitted (1) that mopping the restroom if a patron is present is unsafe, (2) that patron has a reasonable expectation that their feet won't be mopped while their in a restroom stall, (3) that if a patron's feet were mopped in that position, it places them in danger of slipping and falling.[48] Yet, this precisely what happened to Hills on April 13, 2024. It is undisputed that Hills fell in the restroom in the presence of De Olmedo. It is undisputed that De Olmedo had a mop in her hands when Hills fell. It is uncontradicted that Hills leggings were wet from contact with the restroom floor, ergo the floor was wet. Hills has provided evidence (which is contested by De Olmedo) that her shoes and the area around her shoes were mopped as she was on the commode in the stall. Hills has provided evidence that her shoes were wet from that mopping. Hills has provided evidence that she did not cause any water to be spilled on the floor. Hills fell moments after being "mopped" and a few feet from the restroom stall.

**3. TCC failed to exercise reasonable care**

---

[48] Exhibit D, Legarde, pp. 28:12 - 29:7. Exhibit F, Deposition of Scott Guidry, pp 48:19 - 49:4 (Lead Security / Incident Investigator for TCC, Guidry testified that it is not safe to mop with a patron in the restroom.

Hills has presented evidence that her shoes were mopped, were made wet by the mopping and that she then slipped and fell shortly thereafter. That is evidence of TCC negligence and also evidence of TCC's violation of its own policies as discussed in the above sections. This constitutes a failure to exercise reasonable care. The posting of permanent caution signs on the bathroom walls does not immunize TCC for its fault. TCC (and TCC's employee's actions) were clear failures of reasonable care toward Hills, its patron.

## III. CONCLUSION

TCC's motion for summary judgment should be denied because the evidence in this case allows a reasonable trier of fact to conclude that Hills fall was due to a condition that presented an unreasonable risk of harm, the condition was created by TCC, and TCC failed to exercise reasonable care. A TCC employee is directly responsible for creating the wet and slippery condition that caused Hills to fall and be seriously injured. The condition was created in violation of TCC's training and safety policies.

Because genuine disputes of material fact exist as to the elements of the relevant statute and law, the Court should deny summary judgment in this matter.

Respectfully submitted,

STRAUSS & KING, APLC

**s/** ***Rhett E. King***
Rhett E. King (LA BAR #23811)
STRAUSS & KING, APLC
909 Poydras Street, Suite 2570
New Orleans, Louisiana 70112
504-523-0033 (telephone)
504-523-0109 (facsimile)
rhettking@straussandking.com

*Counsel for Plaintiff, Rachel Hills*